219 N.J. Super. 44 (1987)
529 A.2d 1017
DONNA TRUEX, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
OCEAN DODGE, INC., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 6, 1987.
Decided July 15, 1987.
*46 Before Judges FURMAN, DREIER and STERN.
Michael B. Kirschner, for appellant.
Karasic, Stone & Susser, for respondent (Bruce P. Fromer, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant appeals from a judgment entered against it in the Special Civil Part, Monmouth County. Defendant contends that the trial judge correctly determined that the parties had not entered into a contract, but erred in finding that defendant nevertheless violated the Consumer Fraud Act. Defendant, therefore, seeks reversal of the award of damages, costs and counsel fees. Plaintiff cross-appeals "only from that portion of the decision finding that no binding contract existed between Plaintiff *47 and Defendant" and awarding damages in the amount of only $90.
The critical facts are set out in the trial judge's letter opinion of July 1, 1986:
[P]laintiff appeared at defendant's car dealership on May 24, 1985, in response to an advertisement in "The Auto Shopper." Plaintiff observed defendant's ad in five consecutive weekly circulars. Included was a Dodge van price at $4,985.
Plaintiff and a representative of defendant negotiated the sale of the van for a purchase price of $2,985, plus two trade-in vehicles. Plaintiff signed a written agreement evidencing the purchase price and the trade-ins. In addition, plaintiff paid $30 as a deposit. Defendant's representative did not sign the agreement.
Plaintiff returned with her trade-ins on May 29, 1985. At this time plaintiff was informed that there had been a mistake in the advertisement and that the price was not $4,985 as advertised but was $7,165.
Defendant's representative stated that the van could not be sold for the advertised price of $4,985 and further that plaintiff's trade-ins were not satisfactory.
The parties attempted re-negotiation of the sale for a price of $5,695 without trade-ins. However, this agreement was not finalized because plaintiff refused to sign a release as to defendant's potential liability for the erroneous advertising.
Plaintiff filed this suit alleging a violation of the Consumer Fraud Act on the basis of false advertising, attempted repudiation of an alleged contract and capricious rejection of plaintiff's trade-ins. Plaintiff claims entitlement to treble damages, costs and fees under N.J.S.A. 56:8-19.

I
The trial judge concluded "that defendant in fact engaged in unconscionable business practices in violation of N.J.S.A. 56:8-1, et seq.," but did not find "that the parties entered a binding agreement." Therefore the court assessed damages at $30, the amount of the deposit, and trebled that amount, thus entering judgment in the amount of $90, "plus costs and statutory attorney's fees in the amount of $25" and counsel fees in the amount of $1,900.
As the trial judge noted in his letter opinion, it is an unlawful motor vehicle advertising practice to "use ... an advertisement as part of a plan or scheme not to sell the motor vehicles advertised or not to sell the same at the advertised price." N.J.A.C. 13:45A-2.2(a)1i. Moreover, "switching the purchaser to a higher-priced motor vehicle" after "[a]ccepting a deposit for an advertised motor vehicle" constitutes "prima facie evidence *48 of a plan or scheme not to sell a motor vehicle as advertised or not to sell the same at the advertised price." N.J.A.C. 13:45A-2.2(a)1ii(6). See also N.J.A.C. 13:45A-2.2(a)1ii(3). As the trial judge found,
In the instant case, defendant advertised the subject van for five consecutive weeks at a price of $4,985. Defendant negotiated the sale of the van for $2,985 with a $2,000 trade-in allowance on two vehicles owned by plaintiff subject to defendant's inspection of the trade-ins. Defendant accepted plaintiff's deposit of $30 at the original negotiation.
Thereafter defendant informed plaintiff that the actual cost of the van would be $7,165 and further that plaintiff's trade-ins were unacceptable.
The Court does not accept defendant's claim of simple advertising error. This is so particularly in light of the $2,180 disparity in the price written up by defendant's representative in the original agreement, $4,985, and the actual price of $7,165.
During the course of the trial plaintiff's counsel indicated that "We are willing to acknowledge that there was a mistake made in that Auto Shopper. We are not going to fight with that. We acknowledge a mistake was made in the Auto Shopper." Defendant argues that that stipulation bars a finding of an unconscionable business practice. However, given the totality of circumstances including the form defendant's president asked plaintiff to sign on May 29, 1985 indicating that she released defendant from sale of the vehicle at the "erroneous price of $4985.00" and that "being of sound mind" she was desirous of buying the vehicle at $5,695, we cannot conclude that the trial court erred in its conclusion that defendant engaged in unconscionable business practices. This is particularly true because the trial judge expressly stated that he didn't believe the defense and stated "I don't find and believe that anything dealing with that ad was really in this transaction at all. I can't believe a salesman didn't know the price of the car, at least the price they want to get for it, and it was a lure to get the person into the shop." As an appellate court we must accept factual findings of the trial judge when supported by credible evidence in the record. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974); Hundred East Credit Corp. v. Eric Schuster, 212 N.J. Super. 350, 357 (App. Div. 1986), certif. den. 107 N.J. 60, 107 N.J. 61 (1986). See also In re Alleged will of Esther Smith, 108 N.J. 257, 261 (1987). It *49 is clear that the trial court found, even assuming that the mistake in the advertisement was attributable to the Auto Shopper, that the advertisement continued for five consecutive weeks[1] and that the aggregate of events, including the five consecutive advertisements, all combined to present sufficient evidence of a motor vehicle advertising practice unlawful under the Consumer Fraud Act. See N.J.S.A. 56:8-4 (power to promulgate rules and regulations "which shall have the force of law"); N.J.A.C. 13:45A-2.2.[2]
Plaintiff presented a prima facie case of a plan or scheme not to sell a motor vehicle as advertised or not to sell it at the advertised price, see N.J.A.C. 13:45A-2.2(a)1ii(1), (2), (3), (6), and given our scope of review, we do not disturb the trial court's findings that defendant engaged in an unconscionable business practice in violation of the Consumer Fraud Act. This is especially true because
It is not necessary to show actual deceit or a fraudulent act; any unconscionable commercial practice is prohibited. State v. Hudson Furniture Co., 165 N.J. Super. 516, 520 (App.Div. 1979). A merchant's subjective good faith does not excuse technical noncompliance with regulations promulgated under the Consumer Fraud Act. Id. at 519. The act is broadly designed to protect the public, even when a merchant acts in good faith. We must read its remedial provisions with that purpose in mind. [Skeer v. EMK Motors, Inc., 187 N.J. Super. 465, 470 (App.Div. 1982).]

II
Execution of a contract between the parties is not essential to recovery under the Consumer Fraud Act. See Neveroski v. Blair, 141 N.J. Super. 365, 376 (App.Div. 1976). Thus, damages can be recovered for any "ascertainable loss of moneys or property," together with counsel fees, filing fees and reasonable costs, even if no contract was executed between the parties. See N.J.S.A. 56:8-19. See also Ramanadham v. N.J. Mfrs. Ins. Co., 188 N.J. Super. 30 (App.Div. 1982). However, the *50 existence or nonexistence of a contract between the parties may impact on the amount of damages.[3]
The trial court found that the parties did not enter into a binding agreement because defendant "had yet to inspect plaintiff's trade-ins and because the defendant's representative did not sign the agreement." However, the record is clear that the parties orally agreed that plaintiff was to purchase the vehicle for $4,985 minus the trade-in value. The amount of the trade-in was to be re-evaluated at the time of the delivery of the used vehicles to defendant. Defendant cannot rely upon the parties lack of agreement on the value of the trade-in vehicles as a basis for concluding that there was no contract. See N.J.S.A. 12A:2-305 which provides that "The parties if they so intend can conclude a contract for sale even though the price is not settled". See also Sedmak v. Charlie's Chevrolet, Inc., 622 S.W.2d 694, 697 (Mo. Ct. App. 1981) (interpreting the Missouri equivalent of N.J.S.A. 12A:2-305 and stating "As long as the parties agreed to a method by which the price was to be determined and as long as the price could be ascertained at the time of performance, the price requirement for a valid and enforceable contract was satisfied".)
"A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." N.J.S.A. 12A:2-204(1). The term "goods" includes a used automobile, see N.J.S.A. 12A:2-105, and "Even though one or more terms *51 are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." N.J.S.A. 12A:2-204(3). We conclude that the parties had entered into a contract on May 24, 1985, whether or not it could have been challenged under the statute of frauds. See 1 Restatement, Contracts 2d, §§ 7, 8, 110 (1981); 2 Corbin, Contracts §§ 284, 317 (1950).
We need not decide whether the contract was enforceable or unenforceable under the statute of frauds or whether plaintiff would have a remedy for breach of contract. Nor need we decide whether the cash receipt for the $30 deposit signed by a representative of defendant or whether deposit of plaintiff's check by defendant was sufficient to satisfy the statute of frauds. See N.J.S.A. 12A:2-201(1), (3)(c). See also Iacono v. Toll Bros., 217 N.J. Super. 475 (App.Div. 1987); N.J. Study Comment 8 to N.J.S.A. 12A:2-201 (West ed. 1962) at 99.[4] For present purposes we conclude that even if the contract is unenforceable by virtue of the statute of frauds, N.J.S.A. 12A:2-201, the $4,985 purchase price embodied therein, measured against the $5,695 "adjusted" price under the later offer tendered by defendant (and which was, according to testimony and trial court's findings, rejected by plaintiff only because of the release she was asked to sign) nevertheless gives rise to an "ascertainable loss of moneys or property" for purposes of determining damages under N.J.S.A. 56:8-19. This was the amount to which plaintiff thought she was "entitled." Plaintiff's *52 loss under these facts therefore was $710 which trebled should have resulted in a judgment of $2,130 plus costs and attorneys' fees.
Accordingly, we conclude that the trial judge erred in determining that the damages were $30, the amount of the deposit.[5] We remand to the Special Civil Part for purposes of ascertaining the full damages, including costs and attorneys fees pursuant to N.J.S.A. 56:8-19.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Patsy Fiore, an employee of defendant, testified that it was his responsibility to check the ad but that he did not do so.
[2] The court did not expressly find that the release was itself part of the scheme. See N.J.A.C. 13:45A-2.2(a)1ii(6).
[3] Plaintiff does not seek an injunction requiring transfer of the vehicle to her at the agreed price, and for the reasons we state infra we do not pass upon whether there was an enforceable contract. A violation of the Act as defined in N.J.S.A. 56:8-2 does not give rise to damages unless there is an "ascertainable loss of moneys or property" as provided in N.J.S.A. 56:8-19. The damages must be proximately caused by the violation. Ramanadham v. N.J. Mfrs. Ins. Co., supra. We do not necessarily conclude that, in the absence of a contract, there was no "ascertainable loss" by virtue of the unlawful motor vehicle advertising practice, see Skeer v. EMK Motors Inc., supra, 187 N.J. Super. at 470; see also State v. Hudson Furniture Co., 165 N.J. Super. 516, 520 (App.Div. 1979).
[4] A deposit or part payment for an automobile has been held to satisfy the statute of frauds under provisions of law similar to N.J.S.A. 12A:2-201. See Morris v. Perkins Chevrolet, Inc., 663 S.W.2d 785, 787 (Mo. Ct. App. 1984) ("... Morris's $100 down payment on the Corvette took the contract out of the Statute of Frauds"); Sedmak v. Charlie's Chevrolet, Inc., supra, 622 S.W.2d at 698; Paloukos v. Intermountain Chevrolet Co., 99 Idaho 740, 745, 588 P.2d 939, 944 (Sup.Ct. 1978); Lockwood v. Smigel, 18 Cal. App.3d 800, 804, 96 Cal. Rptr. 289, 291 (Ct.App. 1971). See also The Press, Inc. v. Fins & Feathers Publishing Co., 361 N.W.2d 171, 173-174 (Minn. Ct. App. 1985).
[5] Plaintiff is entitled to the return of her deposit. However, as defendant endeavored to return the deposit, the amount should not be included in the determination of damages under N.J.S.A. 56:8-19.