**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3103
_____

JAMES T. GENGO,
Individually and on behalf of all others similarly situated,

Appellant

v.

JETS STADIUM DEVELOPMENT LLC;
NEW YORK JETS LLC

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2:18-cv-08012)
District Judge: Hon. Stanley R. Chesler

Submitted under Third Circuit L.A.R. 34.1(a)
April 2, 2019

Before: CHAGARES, HARDIMAN, and SILER, JR,* <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 29, 2019)

_____

OPINION+
_____

---

* The Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Court of Appeals for the Sixth Circuit, sitting by designation.

+ This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SILER, Circuit Judge.

James T. Gengo appeals the district court's order granting a motion to dismiss filed by Jets Stadium Development LLC and New York Jets LLC. The order dismissed the remaining two counts of Gengo's class action complaint. We will **AFFIRM** the order of the district court.

## I.

We write for the parties and relate only the necessary facts. At issue in this case is a personal seat license ("PSL") agreement between Gengo and defendants. The agreement both allows and obligates Gengo to buy season tickets to football games played by the New York Jets in MetLife Stadium. Gengo paid a fee for the agreement because, at the time, it was the only way to purchase season tickets in Section 245a of the Stadium. Defendants now sell season tickets in the Section to purchasers who have not entered into a seat licensing agreement (*i.e.*, have not paid the fee). Gengo argues this decision by defendants has rendered his agreement "valueless," and constitutes a breach of the covenant of good faith and fair dealing implied in the agreement and is a violation of the New Jersey Consumer Fraud Act. The district court found that the complaint filed by Gengo did not state a plausible ground for relief under either theory and dismissed the action. *See Gengo v. Jets Stadium Dev., LLC*, 2018 WL 4144686 (D.N.J. Aug. 30, 2018).

## II.

This court reviews de novo a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

2

III.

Gengo's claim under the implied covenant of good faith and fair dealing fails because he has received the fruits of his contract. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (Gengo "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties") (quoting 23 Williston on Contracts § 63:22 (4th ed. 1993 & Nov. 2018 update)). By signing the agreement, Gengo represented that he "acquir[ed] this PSL solely for the right to purchase tickets to Jets Home Games played in the Stadium." The agreement "relate[d] to certain seats in the Stadium," and gave Gengo "the right and the obligation to purchase admission tickets for the Seats . . . ." Nothing in the complaint suggests that Gengo has lost the exclusive right to purchase season tickets for these seats, much less that it was defendants' actions that denied him that right. That defendants might now sell adjacent seats to members of the general public does not implicate Gengo's rights and certainly does not strip him of the benefit for which he bargained.

In his briefing, Gengo references the "now valueless PSLs" as "unsellable" because defendants are currently giving away for free what cost him $8,000. This argument is problematic for two reasons. First, it is simply incorrect: there is no allegation that the seats for which Gengo contracted are available to the general public. Second, this argument at most smacks of a bad deal, not bad faith. As part of the contract, Gengo represented that he was not acquiring the license as an investment and

3

had no expectation of profit; he was acquiring it without a view to resell or distribute it; and he acknowledged that defendants did "not represent[] and [did] not guarantee that there is or ever will be a market for the resale of this PSL." Instead, Gengo agreed that he was acquiring the license "solely for the right to purchase tickets" for his selected seats.

Gengo's claim under the New Jersey Consumer Fraud Act fails for similar reasons. He needed to plead an unlawful practice and, regardless of the type of unlawful practice alleged, "capacity to mislead is the prime ingredient[.]" *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). Gengo specifically disclaims that a misrepresentation or omission regarding exclusivity or ticket policies forms the basis of his NJFCA claim. But simply changing the terms on which defendants sell other seats in the stadium is not misleading: the plain language of the agreement stated that Gengo entered it solely for the right to purchase season tickets for his selected seats and that the agreement was limited to this purpose. The agreement, therefore, belies that a licensee could have been misled into thinking it dictated how defendants could sell all other seats in his section. *See Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977) ("The capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice").

Further, Gengo has not shown ascertainable loss as required by the NJCFA. It is true that ascertainable loss "includes more than a monetary loss and may occur when a consumer receives less than what was promised." *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 249 (D.N.J. 2008) (internal quotations and citations omitted). But here,

4

Gengo has made no allegation that he is not receiving what his agreement explicitly states is its sole benefit:  the ability to buy season tickets for his seats.  By the plain language of the agreement, he has received, and continues to receive, what was promised.

We will **AFFIRM**.