935 A.2d 1259 (2007)
397 N.J. Super. 103
Carole MAGUIRE, Plaintiff-Respondent
v.
Robin MOHRMANN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 8, 2007.
Decided December 13, 2007.
*1260 Zabel & Associates, Cherry Hill, for appellant (Deidre E. Gannon, Franklinville, on the brief).
Respondent has not filed a brief.
Before Judges CUFF, LISA and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
Defendant Robin Mohrmann, a private dog breeder, appeals from a Special Civil Part judgment awarding plaintiff Carol Maguire $1,399.52, plus $21 in court costs. Mohrmann sold Maguire a brown and white English Springer Spaniel puppy for $1,000 on August 11, 2006. The puppy died five days later. Prior to instituting legal action, Maguire informed Mohrmann of the dog's death and obtained a veterinary certification that the puppy had been certified "unfit for sale." The puppy was suspected to have an "underlying infectious parasite, metabolic, congenital disorder." Maguire did not deliver the veterinarian's certification to Mohrmann; she attached it to her complaint.
*1261 At trial, after presentation of plaintiff's evidence, Mohrmann moved to dismiss the complaint because Maguire failed to provide her with the veterinarian's certification, thus preventing Mohrmann from securing an autopsy. The trial judge denied the motion because Maguire had provided oral notice. The trial judge then voided the contract based upon mutual mistake and awarded plaintiff the purchase price of the dog and the veterinary expense.
On appeal, Mohrmann asserts the trial judge erred by applying contract principles in light of the specific regulations that control the rights and responsibilities of the parties. Mohrmann maintains that plaintiff's recovery was specifically conditioned on the delivery of the certification that the animal was unfit for sale. Maguire's noncompliance eliminated her ability to obtain relief. We disagree and affirm the trial court's judgment.
When Maguire purchased the puppy, Mohrmann gave her a statement entitled "KNOW YOUR RIGHTS  A STATEMENT OF NEW JERSEY LAW GOVERNING THE SALE OF DOGS AND CATS." The document, executed by both purchaser and seller, states:
The sale of dogs and cats is subject to a regulation of the New Jersey Division of Consumer Affairs. In the event that a licensed Veterinarian certifies your animal to be unfit for purchase within 14 days following the receipt of your animal or within six months in the case of a congenital or hereditary cause or condition, you may:
I. Return your animal and receive a refund of the purchase price.
II. Keep you[r] animal and attempt to cure it; or
III. Return your animal and receive an animal of your choice of equivalent value.
Further, in the event of your animal's death within this 14-day period, except where death occurs by accident or as a result of injuries sustained after delivery, you may choose to receive either a full refund of the purchase price or an animal of your choice of equivalent value. In addition, veterinary fees limited to two times the purchase price of the animal must be paid by the pet dealer.
In order to exercise these rights, you must present to the pet dealer a written veterinary certification that the animal is unfit for purchase and an itemized bill of all veterinary fees incurred prior to your receipt of the certification. Both of these items must be presented no later than 7 days after you have received the certification of unfitness. In the event that the pet dealer wishes to contest the certification of the bill, he may request a hearing at the Division of Consumer Affairs. If the pet dealer does not contest the matter, he must make the refund or reimbursement no later than ten days after receiving the veterinary certification.
Mohrmann also gave Maguire a health certificate from Lawrence Wolf, V.M.D. certifying that "a black and white English Springer Spaniel" had been examined by him on August 8, 2006, and was found to be "free from infectious or contagious diseases." The veterinary records introduced into evidence reflect treatment for worms on August 2 and 7, 2006. The trial judge noted that it was not clear if Dr. Wolf had examined the brown and white puppy purchased by Maguire.
Four days after purchase, Maguire's puppy became limp and would not eat. As Maguire drove to the veterinarian's office, she called Mohrmann to tell her of the puppy's condition. Maguire learned from Mohrmann that the dog had been ill approximately two weeks prior, and Mohrmann *1262 had "nursed him back to health." Maguire left the pet with her veterinarian for treatment. Unfortunately, the dog passed away during the night. The veterinarian issued a certificate of unfitness and a bill, totaling $399.52.
Maguire notified Mohrmann that the puppy had died. Mohrmann acknowledged she had spoken to the veterinarian's office and told Maguire she was going away for the weekend and would call on August 21, 2006. Beginning that Monday, Maguire spent almost a week attempting to contact Mohrmann by telephone, email, and online messages. In an email dated Sunday, August 27, 2006, Maguire stated that unless she heard from Mohrmann by August 30, 2006, she would accept only reimbursement of her expenses. Thereafter, Mohrmann instructed Maguire to contact her attorney. Maguire then filed her complaint.
The Pet Purchase Protection Act, N.J.S.A. 56:8-92 to -97 (PPPA) is a consumer protection statute that governs the sale of dogs and cats sold by pet shops. N.J.S.A. 56:8-95(a) through (f). The statute states:
No provision of this act shall be construed in any way to alter, diminish, replace, or revoke the requirements for pet dealers that are not pet shops or the rights of a consumer purchasing an animal from a pet dealer that is not a pet shop, as may be provided elsewhere in law or any rule or regulation adopted pursuant thereto.
[N.J.S.A. 56:8-94.]
Prior to enactment of the PPPA, regulations governing the sale of cats and dogs were adopted by the Attorney General pursuant to the Consumer Fraud Act, N.J.S.A. 56:8-1 to -166(CFA). Pet Dealers Ass'n v. Div. of Consumer Affairs, 149 N.J.Super. 235, 237, 373 A.2d 688 (App. Div.) certif. denied, 75 N.J. 16, 379 A.2d 247 (1977). Effective December 4, 1995, specialized regulations governing dog and cat sales by pet dealers were implemented by the Director of the Division of Consumer Affairs (DCA). N.J.A.C. 13:45A-12.1 to -12.3. Because Mohrmann was a pet dealer, that is, "any person engaged in . . . the sale of animals for profit to the public or any person who sells . . . more than five animals per year," N.J.S.A. 56:8-93 and N.J.A.C. 13:45A-12.1, she is subject to the DCA regulations, not the PPPA.
As authorized by the CFA, the DCA regulates pet dealers to prevent deceptive sale practices, and requires that prior to the pet sale, the seller afford notice of the rights and responsibilities of the purchaser of an animal. N.J.A.C. 12-45A-12.1 to -12.3. The regulations provide an alternative remedy to consumers who purchase a dog or cat from a "pet dealer" that is later discovered to be "unfit for purchase." N.J.A.C. 13:45A-12.1. The notice of rights required by N.J.A.C. 13:45A-12.3(a)10, generally provides an overview of the regulatory provisions. This is the notice Mohrmann gave Maguire.
A dog is "unfit for purchase" if the animal dies "within 14 days of its delivery to the consumer, except by death by accident or as a result of injuries sustained during that period." N.J.A.C. 13:45A-12.1. A consumer who obtains a veterinarian's certification that the animal was "unfit for purchase," N.J.A.C. 13:45A-12.3(a)6, may elect one of four options for relief, including a return of the purchase price and reimbursement of veterinary costs, not to exceed the cost of the pet. N.J.A.C. 13:45A-12.3(a)6(iv). If a consumer delivers the veterinary certificate and the statement of charges to the pet dealer within five days of receipt, the pet dealer must record and comply with the consumer's elected remedy within ten days. N.J.A.C. 13:45A-12.2(a)7 through 9.
*1263 The regulations also provide a procedure for the pet dealer to contest the consumer's election of relief by notifying "the consumer and the Director of the [DCA] in writing within five days following the receipt of the veterinarian's certification, and he may require the consumer to produce the animal for examination by a veterinarian of the dealer's choice at a mutually convenient time and place." N.J.A.C. 13:45A-12.3(a)9.
Mohrmann maintains that Maguire's failure to timely present the veterinary certification of unfitness results in the dismissal of her claim. We reject such a rigid interpretation of the regulatory procedures, which would undercut Maguire's consumer claim.
The CFA protects consumers against fraud and misleading practices in the sale of goods and services. Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 270, 390 A.2d 566 (1978); Pet Dealers, supra, 149 N.J.Super. at 239, 373 A.2d 688. To accomplish the CFA's remedial purposes, and its deterrent and protective objectives, its provisions must be interpreted broadly. Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139, 741 A.2d 591 (1999); Lemelledo v. Beneficial Mgmt., 150 N.J. 255, 264, 696 A.2d 546 (1997). The intent of the regulations at hand is to safeguard consumers from sharp practices in the sale of dogs and cats by pet dealers. The regulations assure "a remedy for the consumer who seeks to purchase a healthy pet but instead receives an unhealthy or otherwise defective animal." Pet Dealers, supra, 149 N.J.Super. at 239, 373 A.2d 688.
In her decision, the trial judge determined that plaintiff had conveyed notice to defendant of the dog's death, finding that "the spirit of this regulation . . . has been met." We understand that the trial judge applied the doctrine of substantial compliance.
Substantial compliance "is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims," Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 352, 771 A.2d 1141 (2001) (citing Zamel v. Port of N.Y. Auth., 56 N.J. 1, 6, 264 A.2d 201 (1970)); Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 151, 836 A.2d 779 (2003), and "avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." Sprenger v. Trout, 375 N.J.Super. 120, 139, 866 A.2d 1035 (App.Div. 2005).
"The doctrine requires the moving party to show: `(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute.'" Ferreira, supra, 178 N.J. 144, 151, 836 A.2d 779 (2003) (quoting Galik, supra, 167 N.J. at 353, 347-48, 771 A.2d 1141). Although no specific case was found applying the doctrine to regulatory provisions, we conclude that, in the absence of language foreclosing that possibility, no impediment to application is presented.
Here, defendant was informed of the dog's illness, was told of the veterinarian's examination, and was advised that the animal had died. Maguire complied with Mohrmann's request to call when she returned from her weekend trip to discuss the matter further. Mohrmann then avoided plaintiff's numerous telephone calls and ignored the emails she sent requesting relief.
We find disingenuous Mohrmann's position that she was waiting for the written *1264 confirmation from the veterinarian before taking action. Mohrmann was well-versed in her obligations and rights under N.J.A.C. 13:45A-12.3(a)9. She spoke to plaintiff's veterinarian and learned of the suspected cause of death, yet she did not request presentation of the dog for her independent examination.
Defendant's proposed rigid construction of the regulations strains the broad protections afforded to consumers by the CFA. We conclude that based upon the facts presented, Mohrmann chose not to exercise her right to autopsy the animal after Maguire substantially complied with the requirements of N.J.A.C. 13:45A-12.3(a)(7). Plaintiff was entitled to the relief granted.
Affirmed.